LOBERG, Appellant, vs. TOWN OF AMHERST, Respondent.

*April 14 — May 1, 1894.*

*Highways: Injury to person from defects: Crosswalk over gutter: Building materials: Rights of abutting owner: Unreasonable use: Court and jury: Notice: Evidence.*

1. A highway in a village had been turnpiked, leaving on one side a ditch eight or ten feet wide and having an average depth of twelve or fourteen inches, which was filled with water much of the time. A crosswalk in the nature of a bridge across such ditch, substantially like the crosswalks in general use over gutters and

ditches, left unobstructed the traveled portion of the road, which was of ample width. *Held,* that such crosswalk was not an obstruction or defect in the highway.

2. An abutter on a highway has a right to use temporarily a reasonable portion thereof for the deposit of mortar boxes, etc., while necessarily used in plastering his house. Even if able to use them in his yard or garden, he is not bound to do so at the peril of injuring his shrubbery or plants.

3. The question of reasonable necessity and use is ordinarily one for the jury; but where, as in this case, the facts are undisputed and no more space was occupied on the margin of the highway than was actually occupied by two mortar boxes of ordinary size, a barrel of lime, and some sand, and there is no claim that the use had been unreasonably prolonged, the question is properly decided by the court.

4. A town is not liable for an injury resulting from the fright of a horse caused by the presence of such mortar boxes, etc., in the highway, even though they were likely to frighten horses of ordinary gentleness, unless such use of the highway was unlawful or unreasonable and the town had notice of that fact.

5. The mere presence of such mortar boxes, etc., in the highway was not constructive notice to the town authorities that the abutting owner was making an unlawful and unreasonable use of the highway, nor was it actual notice of that fact to an overseer who merely saw them there the day before the accident.

6. In an action against a town for an injury alleged to have been caused by building materials in the highway, evidence that the person who placed them there used and occupied the abutting premises is presumptive evidence that he was the owner of such premises and had the rights of an abutting owner.

APPEAL from the Circuit Court for *Portage* County.

This was an action for the recovery of damages sustained by reason of alleged defects and insufficiencies of the highway of the defendant town which passes through the village of Amherst, being the main street in the village, and a part of the Stevens Point and Waupaca road, which runs from Amherst Junction to the said village, passing in front of the school-house, and thence across Waupaca river to the city of Waupaca. The defects complained of consisted of a plank crosswalk commencing at

the sidewalk on the west side of said street or road oppo-
site the house of one Jensen, and extending easterly to
and upon the grade of the road and within about two feet
of the traveled track. The road had been heavily turn-
piked, so that between the traveled track and said sidewalk
on the west side there was a depression, ditch, or gutter
about eight or ten feet wide, filled with water, more or
less, for a considerable part of the year, though at times
nearly or quite dry, which grew deeper from the side of
the road until at or near the sidewalk, where it was two
and one-half or three feet deep, but it was somewhat shal-
low at or near the road as worked and used, having an
average depth of twelve or fourteen inches. The cross-
walk over the ditch was embedded in the turnpike portion
of the highway at its eastern end, and rested on a foun-
dation of stone and earth near the sidewalk at the western
end, and had been built by Jensen as a means of enabling
him and others who lived on the east side of the road,
along which there was no sidewalk except in front of Jen-
sen's house, to cross over the ditch to the sidewalk on the
west side of the road, which extended south into the vil-
lage and north as far as the village school. The crosswalk
was substantially in the nature of a bridge over the ditch
or depression along the western side of the road. It had
been traveled over and used about two years and a half.
The traveled portion of the road between the east end of
the crosswalk and the east side of the road was wide
enough to permit three wagons to pass abreast.

At the time in question — October 9, 1891 — there were
on the east side of the road, between the sidewalk and the
traveled part of the road in front of Jensen's house, two
mortar boxes, made white by frequent use, about the or-
dinary size, a barrel of lime, and some sand, all nearly op-
posite to the crosswalk, but about six feet further north
towards the school-house, which was on the same side of the

road.    They had been placed there Wednesday evening, to enable Jensen to have some plastering done in the rooms in the front part of his house.    The accident happened the next Friday noon.    It was claimed on the part of the plaintiff that these boxes were likely to frighten and startle horses traveling along the road, and that the town officers knew these facts, but carelessly and negligently suffered and permitted the boxes to so remain.    It appeared that the overseer of the district saw the boxes in front of Jensen's the day before the accident.

The accident occurred at said crosswalk, some sixty or eighty rods north of the village hotel; and about 230 feet north of the place of the accident is the said school-house; and the town hall is about eighty-six feet from the same place, near which there is a street crossing.    The sidewalk on the west side of the road extends from opposite the hotel to or near the school-house.    F. E. Timian used and occupied the premises on the west side of the road opposite the place of the accident, and said Jensen on the east side.    There was no evidence, other than such possession and use, to show who owned the places they so occupied, nor that Jensen had any leave or permission from any one to place the mortar boxes where he did; and the testimony was that he placed them there because to place them inside of his yard would spoil his plants and shrubbery, and that it was easier and more convenient to have them where they were; and they were in fact in use in doing the plastering at the time of the accident.

The manner in which the accident occurred, as stated by the plaintiff and one Oleson, who was riding with him, was in substance that they came with a single horse and buckboard vehicle, the plaintiff driving, from Amherst Junction to Amherst, and arrived by the village school-house, on the east side of the street, about noon.    "All the children

came out, and the horse started up a little fast, but was not scared until he came to the culvert or little bridge. He looked at some lime boxes on the opposite or left-hand side; then he made several jumps. He commenced to shy two or three rods north of the crosswalk. I pulled him in with the left line, but didn't hardly get him in the road. When I pulled him in, he turned his head towards the boxes. I got him partially in the road. I didn't notice the crossing before the wheels were right on it. Then I hollered 'Whoa!' and at the same time I was thrown out of the buggy, and the horse stopped. When the wheel of my wagon struck the crosswalk it threw me out." The plaintiff testified the horse was hardly a high-spirited horse, but had run away about six years before, and was not an unusually hard horse on the bit; that he considered him a safe horse to drive. "He got to running before I was thrown out, and he made several jumps. At that time the wheel nearest the track was several feet out of the road, but this did not bring the buckboard in the deepest part of the ditch. The west wheel was not in the lowest part of the ditch when he made these lunges. I had the lines one in each hand, and tried to stop him for several rods, but could not. The east wheel was two or three feet west from the traveled track." Oleson gave substantially the same account of the accident, and said the horse went six or eight feet out of the main traveled track. " The horse got the buggy out of the road,— shied out with it,— and when the wheel of the buggy hit the walk it threw the plaintiff out, and all the wheels passed over the crosswalk." The evidence was that the right-hand wheel of the buggy struck the crosswalk or bridge over the ditch or gutter, from fourteen to eighteen inches above the ground below. Evidence was given tending to show that the plaintiff's horse got beyond his control, and that his fright was caused at first

by the noise of children coming out of the school-house. It appeared that Jensen removed the mortar boxes on the same day after the injury. The plaintiff sustained a fracture of the bones of the leg above the ankle, and was very seriously injured.

After the testimony had been closed, the plaintiff offered to prove that there was room in Jensen's yard in which the mortar boxes could have been placed as near to the rooms he desired to plaster as the location of the boxes on the outside of the sidewalk. The court overruled the offer, and directed a verdict for the defendant, upon which it had judgment, from which the plaintiff appealed.

For the appellant the cause was submitted on the brief of *Raymond, Lamoreux & Park*. They contended, *inter alia*, that the question whether the placing of the mortar boxes in the street was a reasonably necessary use thereof was for the jury. *Raymond v. Keseberg*, 84 Wis. 302–310; *Wood v. Mears*, 12 Ind. 515; *S. C.* 74 Am. Dec. 222; Angell, Highways, sec. 25; *Jochem v. Robinson*, 66 Wis. 638; *Cairncross v. Pewaukee*, 86 id. 181; *Graves v. Shattuck*, 35 N. H. 257; *Callanan v. Gilman*, 107 N. Y. 360, 365, 369; *Clark v. Fry*, 8 Ohio St. 358, 375, 376; *Davis v. Winslow*, 51 Me. 264. Whether a particular condition of a street, considered either in respect to grade or manner of construction, amounts to a defect or not, is a question of fact for the jury. *McMaugh v. Milwaukee*, 32 Wis. 201; *McNamara v. Clintonville*, 62 id. 209; *Kaples v. Orth*, 61 id. 531; *Hill v. Fond du Lac*, 56 id. 242–248; *Whitney v. Milwaukee*, 57 id. 639; *Perkins v. Fond du Lac*, 34 id. 435; *Barstow v. Berlin*, id. 357; *Hall v. Manchester*, 40 N. H. 410; *Ill. Cent. R. Co. v. Kelley's Adm'rs*, 10 U. S. App. 537; *Aldrich v. Gorham*, 77 Me. 287; *Drew v. Sutton*, 55 Vt. 586; *Warner v. Holyoke*, 112 Mass. 392.

For the respondent there was a brief by *Cate, Jones & Sanborn*, and oral argument by *A. W. Sanborn*.

PINNEY, J.   1. The uncontradicted evidence makes it very plain that the crosswalk extending from the western portion or side of the highway, turnpiked up as it was, over the so-called depression, gutter, or ditch, was in no just or proper sense an obstruction or defect in the highway in question.   In respect to the manner of its construction, its situation and location with reference to the sidewalk on the west side of the highway and somewhat above it and the ditch beneath it, as well as the highway itself, there is no question or controversy.   There was no question to be submitted to the jury in reference to this so-called crosswalk or bridge.   It was clearly a public convenience and a reasonable necessity in the use of the road and sidewalk along it for those living on and along the east side of the highway, or who desired to cross over from thence to the sidewalk and pass upon it, either south into the village or north to or near the village school.   It was substantially like the crosswalks in general use over gutters and ditches along streets in cities and villages and ordinary highways where crosswalks are needed.   It was not likely to form any hindrance, inconvenience, or delay to any one traveling along or upon the turnpiked portion of the highway, or to any part of it designed and fitted for travel with ordinary vehicles; and the highway at this point, as turnpiked and in its ordinary condition for use, was of ample width.   The ditch over which the crosswalk extended was designed and convenient only for drainage, and the crosswalk was a legitimate and proper convenience to enable pedestrians to cross it.   It had been in use for two years and a half, so far as appears, without complaint, and with the presumed sanction at least of the town officers.   Ditches or gutters, with walks across the same for the use of pedestrians, are of such common necessity and general use that they cannot be considered as defects or obstructions in the highway.   As it has been repeatedly held, the town

is not bound to fit and maintain the highway for use and travel in its entire width, nor is it an insurer of the safety of the persons and property of travelers along it. Its liability is founded only upon some fault or negligence on the part of the town, and a finding that the crosswalk or bridge in question was a defect or obstruction, in view of the description of it by the plaintiff and his witnesses, would be manifestly without proper evidence to support it.

2. Assuming that the cause of the fright of the horse which resulted in the injury to the plaintiff was solely the presence of the mortar boxes, etc., on the opposite side of the highway, in front of Jensen's house, and that these objects were likely to frighten horses of ordinary gentleness driven on and along the highway, yet we think that the evidence wholly fails to show that the defendant town is liable for the damages which ensued. We think the evidence of Jensen's occupation and use of the premises, and his acts of ownership over them, in front of which he had placed the boxes, was presumptive evidence of ownership of the premises, so as to make him an abutter on the highway, with the rights of such, whether he owned the fee to the center or only to the margin. As such, he had a right to use temporarily a reasonable portion of the street for the deposit of the mortar boxes, etc., while necessarily used in plastering his house. This right is born of necessity and justified by it. But the necessity need not be absolute. It is enough if it is reasonable, and this temporary use of the margin of the highway by him for that purpose was lawful. As fuel is necessary, a man may throw wood into the street for the purpose of having it carried to his house, and it may lie there a reasonable time; and, because building is necessary, materials proper and adapted to that purpose may be placed in the street, provided it be done in the most convenient manner; and so, as to the repairing of a house, the public must submit to the inconvenience nec-

essarily incident thereto, but, if prolonged for an unreasonable time, such use of the street becomes unlawful. *Hundhausen v. Bond*, 36 Wis. 29; *Raymond v. Keseberg*, 84 Wis. 302; *Calanan v. Gilman*, 107 N. Y. 360, 365; *Clark v. Fry*, 8 Ohio St. 373, 374.

The question of reasonable necessity and use is ordinarily one for the jury, and usually arises where a larger portion of the street is thus occupied than is deemed fairly necessary, or its use is claimed to have been unreasonably prolonged; but where the facts are not disputed, as in this case, and no more space was occupied on the margin of the highway than was actually occupied by the two mortar boxes, etc., and there is no claim that the use had been unreasonably prolonged, the case ought not to be submitted to the jury to find, perchance, a verdict which would be a denial of the legal right under conceded facts, and which it would be the duty of the court to set aside.

Although Jensen might possibly or probably have been able to use the mortar boxes in his yard or garden, we do not think he was bound to do so at the peril of injuring his shrubbery or plants, or that he was precluded on that account from the exercise of his rights as an abutter on the highway. The offer of proof on that point was made after the testimony in the case had been closed, and it was discretionary with the court whether it should be received, and it was not error to reject it. Had it been received, it could not have affected Jensen's right to have used the margin of the highway as he did.

In *Cairncross v. Pewaukee*, 78 Wis. 70, it was pointed out that: "The purpose for which a thing is in the street must and does determine in many cases whether it is there rightfully or not. Take the case of *Bloor v. Delafield*, 69 Wis. 273, where the court held that the mortar box was an obstruction in the highway when placed within the way as a place of temporary deposit *merely;* yet, if such mortar

box had been placed on a wagon and carried along the highway for the purpose of being transported from one place to another, it might have been equally an object in the way which would naturally frighten horses, but there can be no doubt that in such case it would have been rightfully in the way, and neither the owner nor the town would have been liable for an injury resulting from its being there. . . . The liability of a town or other municipality for permitting objects which are naturally calculated to frighten teams to remain in the highway arises out of the fact that they are permitted to be there for an *unlawful* purpose." It is clear, upon the undisputed facts in this case, as well as upon the fact offered to be proved by the plaintiff, that the mortar boxes, etc., in question, at the time of plaintiff's injury, were lawfully in the highway. This is in conformity with the case of *Jochem v. Robinson*, 66 Wis. 638, and *Cairncross v. Pewaukee*, 86 Wis. 181.

3. Upon still another ground we think that the court properly directed a verdict for the defendant. There was no evidence of notice to the town authorities that an unlawful or unreasonable use was being made of the highway by Jensen, the abutter thereon, in consequence of his having placed the mortar boxes on the margin of the street in order to plaster rooms in his house. There was nothing in their mere presence there for such a purpose to operate either as constructive notice to the town authorities, or as actual notice to the overseer, who merely saw them there the day before the accident, that Jensen was exceeding his *prima facie* rights as an abutter on the highway, or making an unreasonable and unlawful use of it. *Cairncross v. Pewaukee*, 86 Wis. 181; *Bartlett v. Kittery*, 68 Me. 358.

For these reasons we hold that the circuit court rightfully directed a verdict for the defendant.

*By the Court.*— The judgment of the circuit court is affirmed.