KENNEDY *v.* DETROIT RAILWAY.

1. STREET RAILWAYS — LOCATION OF TRACKS — RIGHTS OF ABUTTING OWNERS.

Abutting property owners have the right to insist that a street-railway track be laid in the center of the street, as required by the ordinance authorizing the construction of the road, where such location of the track is practicable.

2. SAME — CONSTRUCTION OF ORDINANCE.

The "head" of a street which runs into another street at an acute angle, within the meaning of a municipal ordinance granting the right to construct a street railway along the center of the latter street to the "head" of the former street, and thence along the center of such street, is the point where, in its full width, it terminates, giving to the other street the additional width formed by the junction, where such a construction is consistent with the manner in which the respective streets have been regarded by the municipal authorities and by the public at large.

Appeal from Wayne; Donovan, J. Submitted January 8, 1896. Decided February 26, 1896.

Bill by Pemelia Kennedy to restrain the Detroit Railway from locating its track upon the side of the street adjoining complainant's premises. From a decree dismissing the bill, complainant appeals. Reversed.

*Henry M. Duffield*, for complainant.

*Charles Flowers* and *John B. Corliss* (*H. H. Hatch*, of counsel), for defendant.

MONTGOMERY, J. The defendant was authorized by an ordinance of the common council of the city of Detroit, approved by the mayor, to construct and operate street railways in the streets of said city of Detroit therein described, among them the following:

"A double track in, along, and upon Fourteenth ave-

nue, from the northerly city limits to Bagg street; thence a single track in, along, and upon Bagg street, easterly, to Cass avenue; thence in, along, and upon Cass avenue, southerly, to the head of Clifford street; thence in, along, and upon Clifford street, to the intersection of Henry street."

Henry street is the street next south of Sibley street. The ordinance further provides (section 3):

"The railways in said streets shall be laid in the center thereof, if a single track, * * * and the gauge of the tracks shall be 4 feet 8½ inches."

The complainant, on the 17th of June, 1895, filed a bill setting up that she was the owner of premises having a frontage on Cass street; that the width of Cass street opposite complainant's premises was about 82 feet; that it was entirely practicable for defendant to construct its track down Cass avenue to Clifford street, along the middle of Cass avenue, with a single slight curve opposite Ledyard street; that, if constructed on such line, it would be at least 35 feet from the center of the track to the curb; that the company was proceeding to construct its track so that, in front of complainant's property, it would come within 9 feet of the curb. The bill averred that, if so constructed, it would result in great damage to complainant, that the ordinance did not justify such construction, and prayed an injunction.

The answer admits that, under the ordinance, it is the duty of defendant to construct its track in the center of streets over which it is to operate its road, but denies that Cass street is 82 feet in width in front of complainant's premises, and avers that "that portion of the roadway which complainant calls Cass street is, in effect, a continuation of Clifford street, although for convenience it has been designated as Cass avenue." The answer also denies that it is practicable for defendant to construct its track along Cass avenue to Clifford street in the middle of said avenue by making a curve opposite Ledyard, but avers that such a construction would require the placing

of an additional curve, would be a great interference with travel on said street, and would mar the beauty of said street. The appended map will illustrate the situation, showing the method of constructing a track in the center of the street, and the track as constructed by defendant.

The proofs were taken informally, and some question is made whether complainant's title is sufficiently shown; but we think enough appears, particularly as it is manifest that the case turned below entirely upon the questions of the feasibility of the route in the center of the street, and the proper location of the head of Clifford street, within the meaning of the ordinance.

We think it is clearly established that the line in the center of the street is practicable, and, this being established, it is the right of abutting owners to insist that that line be adopted. There can be no doubt that, in many instances, a street railway opposite the property of an abutting owner is, in fact, an inconvenience; nor do the cases denying compensation proceed upon the idea that this is not so, but rather rest upon the doctrine that such use is fairly contemplated in the original dedication, and that any injury which results from such use is *damnum absque injuria.*

The important question is whether the street in front of complainant's premises is 82 feet wide. Defendant's contention is that Clifford street really extends to the north line of Sproat street, and that that portion of the open space in front of complainant's premises, equal in width to Clifford street further south, is a distinct street, and that it is a compliance with the terms of the ordinance to place the track in the center of this street. The map on page 395 will aid to an understanding of defendant's contention. It appears from the evidence of the city surveyor that Cass avenue is the eastern limit of Cass Farm, and, as it was dedicated to the public, its eastern limit was indicated by the dotted line on the map; and the city engineer draws the conclusion from this that that portion of the thoroughfare north of the

southern boundary of Ledyard street, which lies east of
the dotted line, was originally part of Clifford street. By
an ordinance passed in 1876, the common council changed
the name of Clifford street, north of Sproat street, to Cass
avenue; and defendant's contention is that, now, Clifford
street extends to the north line of Sproat, and that it is to
be treated as a street 60 feet in width to this point. But
we do not discover that any of the part west of the
dotted line was ever a part of Clifford street. It would
result, then, that the head of Clifford street is to be
treated either as the space between the dotted line and
the northeast corner of Sproat street, at its intersection
with Cass and Clifford, or that the dotted line from the
point A to the point B is to be treated as the head. It
is quite evident that the common council could not have
intended that the track should be laid in the center of
the space between point A and the east curb of the
street, as this space is so small as to make it impracti-
cable. If the line between A and B is to be considered
as the head, it is evident that the line must be placed
considerably farther west than its present location.

But, as before stated, it is evident, on actual inspection,
that there is but one street in front of complainant's premi-
ses, and there is strong evidence to show what was meant
by the council by the designation of the head of Clifford
street. In 1889, the council let a contract for paving Cass
avenue from the north curb line of Ledyard street to the
south curb line of Warren avenue, and included in that space
was that part east of the dotted line. In 1893 a contract
was let for paving Clifford street, and the northern ter-
minus of this pavement was the south line of Ledyard
street. In addition to this, it appears that the street in
front of complainant's premises is known as "Cass Ave-
nue," and the buildings are numbered as on Cass avenue.
We are satisfied that, when the council described the
route of defendant's road "along Bagg street, easterly,
to Cass avenue; thence along Cass avenue, southerly, to
the head of Clifford street; and thence along Clifford

street, to the intersection of Henry street,"—by "the head of Clifford street" was intended the point where that street, in its full width, terminated, and where it had been paved to, viz., the south line of Ledyard street.

The complainant moved promptly, and the defendant has persisted in laying its track, notwithstanding complainant's protest and prompt assertion of her rights. The decree will be reversed, and a decree entered in accordance with the prayer of the bill. Complainant will recover costs of both courts.

The other Justices concurred.