N. W. LONGNECKER v. THE WICHITA RAILROAD & LIGHT COMPANY *et al.*

No. 16,093.

### SYLLABUS BY THE COURT.

1. STREET-RAILWAYS—*Operation on City Streets—Authority.* A street-car company has no authority to lay its tracks and operate its cars in the streets of a city without first obtaining permission to do so from the city.

2. ——— *Construction of Ordinance Granting a License.* A city ordinance granting a street-car company a license to lay its tracks in the streets of the city must be strictly construed against, and be strictly observed by, the grantee.

3. WORDS AND PHRASES—*"As Near as May be."* A license requiring street-car tracks to coincide "as near as may be" with the center of the streets over which they pass means as nearly as practicable.

4. STREET-RAILWAYS—*Departure from Prescribed Route in Laying Tracks—Nuisance.* If a street-car company acting under such a license depart from a practicable route in the center of the street it acts without authority, its conduct is unlawful, and its tracks constitute a continuing nuisance. Slight and inconsequential deflections unintentionally made may not furnish ground for action, but substantial deviations fall as completely outside the license as if the tracks were laid at a forbidden place.

5. NUISANCE—*Obstruction of a Street—Injunction—Parties.* An abutting property owner who would suffer special damage may object to the laying of street-car tracks on one side of the street under such a license, if it be practicable to locate them

in the center of the street; and in such a case injunction is a proper remedy.

6. ———— *Right of Abutting Property Owner to Use of Street.* An abutting owner has the right to the exclusive occupation of a limited portion of a city street in front of his property for such temporary purposes incidental to the proper use and enjoyment of his premises as necessity may require. The necessity justifying the encroachment need not be absolute. It is sufficient if it be reasonable according to the usages of reasonable men, having due regard for the convenience of the traveling public.

7. ———— *Same.* The owner of a livery-barn located on a public street who conducts a feed and sales business and also practices the profession of veterinary surgeon has no right to keep horses habitually lodged in the street, nor to use the street as an addition to his barn for the storage of vehicles, nor to use the street as a place for the regular practice of his profession. If his facilities are not sufficient he should enlarge his barn. But exigencies may frequently arise in the conduct of his business rendering it entirely reasonable that he should use a portion of the street temporarily for all such purposes.

8. ———— *Same.* The right which such a property owner has of access to his premises from the street includes not only his own right to unobstructed passage into and out of his barn but the right of unobstructed accessibility to patrons who may come and go and who may need, without inconveniencing others, to stop for brief periods in the street in front of the barn.

9. ———— *Obstruction of a Street—Injury Special to Abutting Property Owner.* An obstruction to the lawful use of the street for the purposes referred to consequent upon the wrongful location of a street-car track inflicts an injury upon the abutting property owner peculiar to himself, independent of and differing from the general detriment to the public.

10. ———— *Injunction—Defense—Avoidance of Injury by Plaintiff.* In an action of injunction to prevent the unauthorized laying of a street-car track near the curbing in front of a livery-barn instead of at the center of the street it is no defense that the owner of the barn has an entrance other than the one wrongfully obstructed which he might use without inconvenience from the track. He is under no obligation to suffer any encroachment on his rights by a wrong-doer.

Error from Sedgwick district court; THOMAS C. WILSON, judge. Opinion filed June 5, 1909. Reversed.

*John D. Davis,* for the plaintiff in error.

*W. A. Ayers, A. S. Buzzi, Kos Harris,* and *V. Harris,* for the defendants in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiff prosecutes error from an order denying him a temporary injunction restraining the defendant street-car company from locating its track near the curbing on the side of a street in front of his property instead of in the center of the street.

Chicago avenue, or Douglass avenue, of which it is merely an extension, runs east and west in the city of Wichita and crosses the Arkansas river. West of the river the street is seventy-six feet wide from curb to curb. The space between the curbing and the property-line on each side is occupied by a 16-foot brick sidewalk. The plaintiff is the owner of certain lots on the north side of the street, the east line of which is seventy-two feet west of the river-bank. On these lots stands a livery-barn, which has a frontage of 100 feet, and two entrances from the street. Here the plaintiff conducts a feed and sales business and practices the profession of a veterinary surgeon. The defendant operates a street-car system under an ordinance of the city which requires tracks to coincide "as near as may be" with the center of streets and avenues over which they may pass, unless otherwise directed by the city engineer. Formerly the ordinary traffic of Douglass avenue was carried over the river on a wooden bridge in the center of the street, and the street-car tracks were laid on a bridge built for the purpose north of the wooden bridge. The county commissioners desired to replace the wooden bridge with one constructed of concrete, and to permit this to be done the street-car bridge was moved farther north—whether farther than is necessary need not now

be considered. As a result the street-car tracks were landed at the river-bank on the inside of the curbing on the north side of the street. The street-car company then sought to bring the tracks to the center of the street by a leisurely curve which left some four or six feet of space between the curb and the track at the plaintiff's east barn door, through which his business with the public is chiefly transacted. Cars pass the barn every six minutes, and a railroad track blocks access to it from the rear.

The plaintiff established with sufficient certainty that the street-car company was about to encroach upon the reasonable and ordinary use and enjoyment of the street to which he was specially entitled as an appurtenant to his individual property, and that as a consequence his business would suffer and his property would be depreciated in value. He further showed, though perhaps not so abundantly, that a sharper deflection of the track was practicable, and that it might, without difficulty, be brought to the center of the street soon enough to prevent obstructing the entrance to his barn. The case was disposed of on a demurrer to the plaintiff's evidence. The evidence was ample to establish a cause of action as against a demurrer, provided injunction is the proper method of obtaining relief. Therefore the court must have taken the view that the plaintiff should have sought redress through an action for damages. The defendant argues here that the plaintiff has mistaken his remedy.

The decision in the case of *Street Rly. Co. v. Nave,* 38 Kan. 744, is quite conclusive in the plaintiff's favor. In that case the company obtained permission from the city to construct its railway upon a certain street, within a given time. The time elapsed before the company took advantage of the privilege. Afterward it undertook to lay its tracks alongside certain buildings fronting on the street which had been constructed with special reference to carrying on the wholesale

grocery business. Goods were taken into and out of the buildings upon large transfer wagons backed with the rear wheels against the curbstone. Sometimes farm wagons were used, and the most convenient method of loading and unloading them was by backing them crosswise of the street. Access to the buildings by the means and in the manner described would have been obstructed by the railway track. If the wagons were placed lengthwise of the street and loaded and unloaded over the sides, as it was possible to do, street-cars could pass them, but other wagons could not pass those which were standing without running upon the street-car track. The building of the railway was enjoined by the district court. This court held the building of the street-car track without authority from the city to be unlawful, the tracks themselves were treated as a nuisance, the resulting obstruction of access to the wholesale houses was held to inflict an injury upon the owners special and peculiar to themselves, independent of and differing from the general detriment to the public, and the judgment awarding an injunction was affirmed.

In the present case the railway company had no right to enter upon the street with its tracks and cars without authority from the city. (*Street Rly. Co. v. Nave*, 38 Kan. 744.) The provision of the license that tracks shall be laid in the center of the street as nearly as may be means of course as nearly as may be practicable. This grant can not be extended beyond its plain terms, and must be construed strictly against the grantee. (*City of Wyandotte v. Corrigan*, 35 Kan. 21.) Whenever the railway company departs from a practicable route in the center of the street it acts without authority and its conduct becomes unlawful. Ease, convenience and lessened expense in constructing or in operating the road are not factors to be considered. Slight and inconsequential deflections unintentionally made may not furnish ground for equitable inter-

27—80 KAN.

ference, but a substantial deviation falls as completely outside the grant as if the tracks were laid upon a forbidden street, and a structure so located is a continuing nuisance which the public authorities or any one specially injured may enjoin.

"Ordinances authorizing obstructions upon the streets of a city, which would otherwise be nuisances, are strictly construed and must be closely pursued. Any substantial variation from the terms of the grant or license is *ultra vires*." (*Walker v. Denver,* 40 U. S. App. 464, 469.)

"Abutting property owners have the right to insist that a street-railway track be laid in the center of the street, as required by the ordinance authorizing the construction of the road, where such location of the track is practicable." (*Kennedy v. Detroit Railway,* 108 Mich. 390, syllabus.)

"The tracks of a street-car company should be laid as nearly as practicable in the middle of the street. If the franchise does not indicate the precise position of the track, and it is not as nearly as practicable to the middle of the street, the track is an unauthorized obstruction, and the owner of the fee of the street may maintain ejectment against the company.

"The mere fact that it is more convenient to the traveling public to have the track on the side of the street, and that it obstructs travel a little less than it would do in the center of the street, is not a sufficient reason for not complying with the law." (*Finch v. Riverside etc. R'y Co.,* 87 Cal. 597, syllabus.)

"A railway constructed in a public street of a city, without authority of law, is a continuous obstruction, which amounts to a public nuisance." (*D. & S. R'y Co. et al. v. Den. City R'y Co.,* 2 Colo. 673, syllabus.)

"The rights of the owners of lots abutting on a public street, even though they do not include the fee of the street, are property rights, the invasion of which without authority by an electric railway may be prevented by injunction.

"Where there is an unauthorized obstruction of a public street, all the adjacent lot-owners who sustain a special injury therefrom can maintain a suit for injunction, and no other parties defendant are required

than the alleged trespasser." (*Hart v. Buckner*, 5 C. C. A. 1, syllabus.)

"A mandatory injunction to compel the removal of an electric-light pole may be granted when the pole is placed in front of the plaintiff's property without necessity therefor, for the purpose of annoying him and to injure and depreciate the value of his property, and where its placing causes serious injury.

"Poles of an electric railway, if properly placed, do not give ground of complaint to an abutting owner, whether he owns the fee of the street or not.

"Poles of an electric railway must not be so placed as to interfere unnecessarily with the right of abutting owners to use and enjoy their property." (*Snyder et al. v. Street Railway Co.*, 105 Iowa, 284, syllabus.)

"The defendant company is in the street in front of the plaintiff's premises without municipal consent. It and its employees are trespassers. They are disturbing the surface of the highway; committing a nuisance upon it of a permanent and, according to the general belief, of a dangerous character. An abutting owner is not debarred from proceeding in such a case because there are other lot-owners on the same street who suffer in the same manner that he does. . . . The plaintiff has what may be called a general interest in the streets as a citizen, and he has a special interest in this street as an abutting owner who must use it as a means of access to his property. He has therefore a right to object to its obstruction by a mere wrong-doer." (*Thomas v. Inter-county St. Ry., Appellant*, 167 Pa. St. 120, 125, 126.)

(See, also, *Canastota Knife Co. v. Newington Tramway Co. et al.*, 69 Conn. 146; *Hartford v. Hartford Street Ry. Co.*, 73 Conn. 327; *Board of Comm'rs of St. Joseph Co. v. South Bend, etc., Street R'y Co.*, 118 Ind. 68; *The Chicago, St. Louis & Pittsburgh Railroad Company et al. v. Eisert*, 127 Ind. 156; *Glaessner v. Anheuser-Busch Brewing Ass'n*, 100 Mo. 508; *Commonwealth v. Railway Co.*, 127 Pa. St. 278; *Richi v. Chattanooga Brewing Co.*, 105 Tenn. 651.)

It is clearly unjust to property owners on one side of a street to obstruct access to their premises by lay-

ing a railway track close to their doors when a practicable route in the center of the street is available and would entail no injurious consequences. The railway company is not the final judge of the practicability of the location of its tracks. The question is one of fact which may be judicially examined and determined as in other cases.

Since the cause must proceed to a final hearing it may be observed that the location of the railway company's bridge may be called in question as one of the matters affecting the practicability of bringing the car tracks to the center of the street before they reach the plaintiff's barn. The extent of the plaintiff's right to use the street in front of his property—also the subject of dispute between the parties—may be noticed further.

Although the streets of a city from side to side and from end to end are designed primarily for passing and repassing, it is quite as lawful for persons and property to be temporarily at rest upon them as it is to be in motion. The defendant's cars must stand still while taking on and discharging passengers. An abutting owner may deposit material on the street in front of his property for building purposes and keep it there until, with ordinary diligence in the prosecution of the work, it is consumed. Such an appropriation of the street is exceptional, and is justified on the ground of necessity; but a license for it may be implied in the absence of an ordinance expressly conferring the right. (*Kansas City v. McDonald*, 60 Kan. 481.) It is furthermore the law that the necessity which justifies temporary encroachment upon a public highway need not be absolute. It is enough if it be reasonable. This does not mean reasonable with reference to the peculiar situation of a particular person or business, but reasonable according to the usages of reasonable men, having due regard for the public convenience.

The opinion of Mr. Chief Justice Tilghman in the case of *The Commonwealth v. Passmore*, 1 Serg. & R.

(Pa.) 217, is frequently quoted. Passmore was an auctioneer who claimed the right to place goods in a public street and keep them there for the purpose of exposing them to sale. In denying the claim it was said:

"It is true that necessity justifies actions which would otherwise be nuisances. It is true also that this necessity need not be absolute; it is enough if it be reasonable. No man has a right to throw wood or stones into the street at his pleasure. But inasmuch as fuel is necessary a man may throw wood into the street for the purpose of having it carried to his house, and it may lie there a reasonable time. So, because building is necessary, stones, bricks, lime, sand and other materials may be placed in the street, provided it be done in the most convenient manner. On the same principle, a merchant may have his goods placed in the street for the purpose of removing them to his store in a reasonable time. But he has no right to keep them in the street for the purpose of selling them there, because there is no necessity for it. . . . I can easily perceive that it is for the convenience and the interest of an auctioneer to place his goods in the street, because it saves the expense of storage. But I see no more necessity in his case than that of a private merchant. It is equally in the power of the auctioneer and the merchant to procure warehouses, and places of deposit, in proportion to the extent of their business." (Pages 217, 219.)

In the case of *O'Linda v. Lothrop*, 38 Mass. 292, after justifying the right to use a street for the deposit of earth from a cellar, of material for the erection of a building, and the like, the court said:

"Much less is it a trespass occasionally to allow horses and carriages to stand in the street against or near a house. This is one of the appropriate uses of a highway. If this were to be deemed a trespass, very few of us would escape." (Page 298.)

In the case of *Henning v. Hudson Valley R. Co.*, 90 N. Y. App. 492, the opinion reads:

"It appears that the defendant's track is laid within three feet of the curb on the plaintiff's side of the street; that when a car is run over that track it extends over to within six or eight inches of such curb.

From this it necessarily appears that whenever any one would drive up to the plaintiff's premises his horse and vehicle would stand on the track and no car would pass without running over him. Thus one must be constantly on the lookout to protect himself from that danger. Under such a situation no hitching-post or horse-block could be maintained opposite the plaintiff's premises; no one could drive up to and stop before them with safety. Although I will concede that the mere existence of the tracks and ties located there would not be a serious inconvenience to the use of such premises, yet the passage of cars over them, as so located, would be not only a constant source of danger whenever it was necessary to cross into or out from such premises but would be a substantial prohibition against driving up and remaining in front of them. It would deprive such premises from the benefit of a very necessary and usual use of the highway. That such an obstruction in the highway would depreciate the market value of the plaintiff's premises seems to me very clear. Such damage seems also to be peculiar to the premises in question, and therefore special to the plaintiff. It is clearly different from that which the traveling public sustains by reason of such obstruction, and although being an unlawful obstruction in a public highway it is a public nuisance, yet, being located as it is, and operating as it does to substantially prohibit access up to the plaintiff's premises in the manner above stated, it works as to him a special damage, which authorizes him to ask that the defendant be enjoined from continuing it." (Page 494.)

Of course the plaintiff has no right to keep horses habitually lodged in the street, nor to use the street as an addition to his barn for the storage of vehicles.

"The highway may be a convenient place for the owner of carriages to keep them in, but the law, looking to the convenience of the greater number, prohibits any such use of the public streets. The old cases said the king's highway is not to be used as a stable-yard, and a party can not eke out the inconvenience of his own premises by taking in the public highway." (*Cohen et al. v. Mayor, etc., of New York,* 113 N. Y. 532, 536.)

And the plaintiff has no right to use the street in front of his premises as a sort of equine hospital for

Longnecker v. Railroad Co.

the regular practice of his profession.   But the plaintiff testified that women frequently come to his place of business in carriages who desire him to examine their horses on the street without obliging them to drive into the barn.   Unless the demands of the traffic on this street be very imperious, who can say that its brief occupation on such an occasion is wrongful?   The right of access includes not merely the right of the plaintiff to go into and out of his barn, but the right to be accessible to patrons who come, who go, and who, without inconveniencing others, need to stop a short while outside; and it is perfectly obvious that exigencies will continually arise incidental to the maintenance of the plaintiff's barn and the conduct of his business rendering it entirely reasonable that he should use the street temporarily for all the purposes mentioned.

The plaintiff further shows that if the street-car track be laid as contemplated a horse or team can not with safety be driven out of the barn until somebody ascertains whether a street-car is coming and if there is time to cross the track ahead of it.   This fact alone will authorize an injunction if the track ought to be in the center of the street.

It is suggested that plaintiff should use the west door of his barn, in front of which the track lies more nearly in the center of the street.   The action is not one of condemnation, in which the plaintiff must be satisfied with facilities much diminished in consequence of a lawful appropriation.   The railway company is charged as a wrong-doer, and the plaintiff is under no obligation to rearrange his barn and reorganize his business to accommodate it in its illegal encroachment.

It is not very apparent why the city and the board of county commissioners were made parties, but an injunction ought to have been granted against the builders of the railway track.

The judgment of the district court is reversed, and the cause is remanded.